**MIDDLETON v. UNITED STATES.**

Civ. A. 10464.

United States District Court
E. D. Pennsylvania.

July 16, 1951.

Sanford D. Beecher, Joseph W. Price, and Duane, Morris & Heckscher, all of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is a suit brought for refund of income taxes for the years 1944 and 1945, the refund being claimed, under Sec. 162 (a) of the Internal Revenue Code, 26 U.S. C.A. § 162(a), in respect of taxes upon one-half of the income of a trust. The trust in question was created by the will and codicil thereto of Richard DeCou who died in 1913. After the payment of specific legacies, the net income of the residuary estate was to be paid, in three equal shares, to the testator's wife, Hannah, his son William, and to certain annuitants (with the provision that any excess of income over the amount necessary to pay the annuities was to go to Hannah and William and the survivor of them). The testator's wife died in 1939 and his son on March 30, 1944, the latter being survived by a divorced wife and two children.

When it came to distribute the residue, a question of considerable difficulty arose. The will provided that at the death of the testator's son, one-half "of the funds in trust for him at the time of his death" should go to his wife on certain conditions and the other half to his children. Then, "After the fulfillment of these provisions," the principal remaining was to go to the Yearly Meeting of Hicksite Friends, a charitable organization, with the request that the income be used to educate deserving children, etc. At the time of the son's death, his mother, as well as all the annuitants, had died, and he was receiving the income of the entire estate. When the testator referred to funds "in trust" for William, at the time of his death, did he mean the third originally given by the will or did he mean the whole estate, of which William was enjoying the income?

The parties in interest compromised their claims, without litigation, after several years of negotiation. By an agreement entered into on Feb. 5, 1946, one-half of the estate, principal and income, was distributed to the Yearly Meeting of Friends and the other half to the other claimants.

During the years 1944 and 1945, income had accumulated in the hands of the trustee, and this claim by him is for a refund of the income tax upon the half of it which finally was distributed, with half of the principal, to the Yearly Meeting of Friends.

Section 162(a) of the Internal Revenue Code allows a deduction of "any part of the gross income * * * which pursuant to the terms of the will * * * is during the taxable year paid or permanently set aside for" charitable purposes. The government's contention is that the half of the residue which was distributed to the Yearly Meeting of Friends came to that organization, not pursuant to the terms of the will, but by virtue of the contract with the individual claimants, and further that, inasmuch as the trustee made no appropriation of the income to any beneficiary and did not credit any of the income on the books of the trust to the Yearly Meeting of Friends, the income was never permanently set aside for the charitable purpose. The taxpayer agrees that both conditions are requisite but contends that both have been fulfilled.

■ I am of the opinion that the distribution to the charity was "pursuant to the terms of the will". In Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 157, 83 L.Ed. 119, the Supreme Court had before it the question of the effect of a compromise agreement settling a contest of a decedent's will. The point in that case was whether the property received under the compromise by one who would have been an heir, had there been no will, was "acquired by * * * inheritance" and, therefore, exempt from income tax under Sec. 22(b) (3) of the

Revenue Act of 1932, 26 U.S.C.A. § 22(b) (3). The Court held that it was. The reasoning of the opinion and the principles upon which the case was decided are applicable to the present case and, I believe, controlling. The general rule to be deduced from Lyeth v. Hoey is that where one obtains title to property as a result of a bona fide claim, which if sustained, would give it to him as an heir of the decedent and which could not be sustained unless he were an heir, the property is "acquired by inheritance", or briefly, in the words of the Court, 305 U.S. at page 196, 59 S. Ct. at page 159, if he obtains it "because of his standing as an heir and of his claim in that capacity." In such case a compromise agreement is merely the means by which title is transmitted.

Technicalities apart, where there is a will there is no substantial difference between acquiring property "pursuant to the terms of the will" and acquiring it "by inheritance". Paraphrasing the language of the Court in Lyeth v. Hoey, in the present case the charity obtained the property because of its standing as a legatee and of its claim in that capacity. It is not necessary to decide the legal questions involved in the interpretation of the testator's will. Suffice it to say that the claim that the Yearly Meeting of Friends was a legatee was bona fide and the claim was recognized as having solid substance by everyone who had an interest in the estate.

As to the income having been permanently set aside, the rule of Bowers v. Slocum, 2 Cir., 20 F.2d 350, is, I think, sound and applicable. In that case the Circuit Court of Appeals for the Second Circuit held that the question was not what the trustees had done or how they kept their books, but whether the will itself permanently set aside the income for the charity, and, further, that, where there was an unconditional gift of the principal of the residue, that amounted to a permanent setting aside of the income as well as the principal.

It follows that the taxpayer is entitled to the refund here claimed and judgment may be entered accordingly.